# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROMAN ZELTSER, ANNA TYUTYUNIK, and JARED BROCK, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>       Defendants. | No. 13 Civ. 1531 (FM)<br><br>**JOINT STIPULATION OF SETTLEMENT AND RELEASE** |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Roman Zeltser, Anna Tyutyunik, and Jared Brock (collectively the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), as well as Litigation Opt-in Plaintiffs Marc Steinberg, Teesta Kaur, Peter Cole, William Wesley, and John Jacobson (collectively, the "Litigation Opt-in Plaintiffs") (together with Named Plaintiffs and Class Members, "Plaintiffs"), and Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation (collectively "Defendants") (together with Plaintiffs, the "Parties").

## RECITALS

WHEREAS, the Named Plaintiffs filed suit against Defendants in the United States District Court for the Southern District of New York, No. 13 Civ. 1531 (FM), captioned *Zeltser, et al., v. Merrill Lynch & Co., Inc., et al.*, in which they claim that they were misclassified as "exempt" and Defendants owe them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and also assert claims against Defendants under the wage and hour laws of California and New York ("the Litigation"); and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and Defendants, including all claims asserted in the Litigation; and

WHEREAS, Defendants deny all of the allegations made by the Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms

and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, on or around November 15, 2012, Named Plaintiffs and Defendants agreed to toll the statutes of limitations on Plaintiffs' and other Field Financial Services Advisors' New York state and federal wage and hour claims and the claims were tolled from November 15, 2012 through and including March 6, 2013; and

WHEREAS, Named Plaintiffs Roman Zeltser and Anna Tyutyunik filed a Class and Collective Action Complaint on March 7, 2013 alleging claims under the FLSA and New York wage and hour claims, and filed an Amended Class and Collective Action Complaint on September 3, 2013 adding California wage and hour claims and Jared Brock as a Named Plaintiff; and

WHEREAS, on January 21, 2014, the Parties participated in a mediation session of this matter in San Francisco, California, which was conducted by experienced class action mediator David Rotman of Gregorio Haldeman & Rotman, and on February 19, 2014 reached an accord resulting in this Agreement; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to Defendants' compensation policies, and analyzed payroll and employment data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.      DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     Agreement.  "Agreement" means this Joint Stipulation of Settlement and Release.

1.2     Acceptance Period.  "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.

1.3     California Rule 23 Class Members, California Class Members.  "California Rule 23 Class Members" means all current and former Field FSAs (as herein defined) employed by Defendants in Bank of America retail banking centers in the state of California during the period September 3, 2009, through and including April 30, 2014.

**1.4**    Charity.  "Charity" means Make the Road New York.

**1.5**    Class Counsel.  "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP, Shavitz Law Group, P.A., and The Young Law Firm, P.C.

**1.6**    Class Members.  "Class Members" means the FLSA Class Members and the California and New York Rule 23 Class Members.

**1.7**    Court.  "Court" means the United States District Court for the Southern District of New York.

**1.8**    Days.  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

**1.9**    Defendants.  "Defendants" means Merrill Lynch & Co., Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Bank of America Corporation.

**1.10**    Defendants' Counsel.  "Defendants' Counsel" means Michael D. Mandel, Philip A. Goldstein, and Bethany A. Pelliconi of McGuireWoods LLP.  For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Michael D. Mandel.

**1.11**    Effective Date.  "Effective Date" shall be the last of the following dates:

    (A)    35 days after the Court enters an Order Granting Final Approval of the Settlement if there is no appeal taken from such Order; or

    (B)    If there is an appeal taken from the Court's Order Granting Final Approval of the Settlement, five days after the last such appeal is withdrawn with prejudice or after all avenues of appellate review are exhausted and all appeals are resolved in favor of final approval.

**1.12**    Employer Payroll Taxes.  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.13**    Fairness Hearing.  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.14**    Field Financial Solutions Advisors, Field FSAs.  "Field Financial Solutions Advisors" or "Field FSAs" means Field Financial Solutions Advisors, and persons in similar positions with comparable titles, who work or worked at Bank of America retail banking centers nationwide.

**1.15**    Final Approval Order.  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

1.16   FLSA Class Members.  "FLSA Class Members" means any and all current and former Field FSAs employed by Defendants during the period from November 15, 2009, through and including April 30, 2014.

1.17   Gross Settlement Amount.  "Gross Settlement Amount" means the Six Million Nine Hundred Thousand and No/100ths Dollars ($6,900,000.00), which is the maximum amount Defendants have agreed to pay to fully resolve and settle this litigation, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, and any Court-approved Service Awards.  Defendants will not be required to pay any more than the gross total of Six Million Nine Hundred Thousand and No/100ths Dollars ($6,900,000.00).

1.18   Litigation.  "Litigation" means the claims represented in the class and collective action Amended Complaint alleging violations of the FLSA and the wage and hours laws of California and New York, and captioned *Zeltser, et al., v. Merrill Lynch & Co., Inc., et al.*, No. 13 Civ. 1531 (FM).

1.19   Litigation Opt-in Plaintiffs.  "Litigation Opt-in Plaintiffs" means Marc Steinberg, Teesta Kaur, Peter Cole, William Wesley, and John Jacobson.

1.20   Named Plaintiffs.  "Named Plaintiffs" means Roman Zeltser, Anna Tyutyunik, and Jared Brock.

1.21   New York Rule 23 Class Members, New York Class Members.  "New York Rule 23 Class Members" means all current and former Field FSAs employed by Defendants in Bank of America retail banking centers in the State of New York during the period November 15, 2006, through and including April 30, 2014.

1.22   Net Settlement Fund.  "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named Plaintiffs and Litigation Opt-in Plaintiffs as more specified herein; and (4) a $50,000.00 reserve fund to cover errors and omissions.

1.23   Notice or Notices.  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing.

1.24   Objector.  "Objector" means an individual who files an objection to this Agreement, except that any individual who opts out of this Agreement may not be an objector.

1.25   Opt-in Plaintiffs.  "Opt-in Plaintiffs" means those individuals who opt into the Litigation by returning a consent to join form before the end of the ninety (90) day Acceptance Period.

1.26    Opt-out Statement.  "Opt-out Statement" is a written signed statement that an individual California or New York Rule 23 Class Member has decided to opt-out and not be included in this Agreement.

1.27    Parties.  "Parties" shall mean, collectively, Named Plaintiffs, Litigation Opt-in Plaintiffs, California and New York Rule 23 Class Members, FLSA Class Members, and Defendants.

1.28    Plaintiffs.   "Plaintiffs" shall mean Named Plaintiffs, Litigation Opt-in Plaintiffs, California and New York Rule 23 Class Members, and FLSA Class Members.

1.29    Preliminary Approval Order.  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.30    Qualified Settlement Fund or QSF.  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Gross Settlement Amount paid by Defendant.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.31    Released Parties.  "Released Parties" means Defendants and all related or affiliated companies and all of such related or affiliated companies' predecessors and successors; and, with respect to each such entity, all of its past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of such programs) and any other persons acting by, through, under, or in concert with any of the persons or entities identified in this Subparagraph.

1.32    Settlement Claims Administrator.  The "Settlement Claims Administrator" will be Settlement Services, Inc., which was selected by Class Counsel and approved by Defendants.  The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; reporting on the state of the Settlement to the Parties; distributing settlement payments and withholding Class Members' share of taxes; coordinating with Defendants to calculate and pay the employer's share of payroll taxes resulting from any settlement payments; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of the Settlement Checks for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein.  Class Counsel will attempt to negotiate with Settlement Services, Inc. a reasonable flat fee for administration of the settlement.  If Class Counsel is unable to negotiate what it believes to be a reasonable flat fee by the time of preliminary approval of the settlement, the

Parties will select another settlement administrator candidate, with whom Class Counsel will attempt to negotiate a reasonable flat fee.

1.33   Settlement Checks.  "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2.   APPROVAL AND CLASS NOTICE

2.1   Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2   Retention of the Settlement Claims Administrator.  Class Counsel will be responsible for retaining the Settlement Claims Administrator.  The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, providing the original Settlement Checks signed by the Class Members to Defendants' Counsel, and providing copies of the Settlement Checks and consent forms to Class Counsel for filing with the Court.

(A)   The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement.  The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks.

(B)   Defendants agree to cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Claims Administrator in locating Class Members.

2.3   **Preliminary Approval Motion.**

(A)   Within five (5) days after the execution of this Agreement, Named Plaintiffs will submit to Defendants a draft Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion") and all supporting documents, including a proposed Preliminary Approval Order.  Named Plaintiffs will allow Defendants two (2) days to review and comment on the terms of the Preliminary Approval Motion and supporting documents, including the proposed Preliminary Approval Order.

(B)   At the expiration of the review and comment period described *supra*, Named Plaintiffs will file the Preliminary Approval Motion.  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing; a proposed Notice of Settlement of Collective Action Lawsuit and

Fairness Hearing; a proposed distribution method for the Gross Settlement Amount and calculation of the Settlement Checks; and a proposed Preliminary Approval Order.

(C)     The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement, or provide objections to this Agreement, which date will be thirty (30) days from the mailing of the Notice to the Class Member but no later than sixty (60) days from the Preliminary Approval Order, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(D)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs and Litigation Opt-in Plaintiffs as more fully set forth herein.  Defendants will not oppose the Preliminary Approval Motion, so long as it is consistent with the provisions of this Agreement.

(E)     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within fifteen (15) days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information:  name, Social Security Number, last known addresses, last known personal and business email addresses (to the extent they are maintained in an existing and readily-accessible electronic database of Defendants' employment records), dates of employment, job titles, with dates, and active workweeks (i.e., not on a leave of absence) within the applicable liability periods as that information exists on file with Defendants ("Class List").

(B)     Within seven (7) days of receiving the Class List from Defendants, the Settlement Claims Administrator will mail to all California and New York Rule 23 Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.  The Notice shall inform the California and New York Rule 23 Class Members of their approximate settlement allocations and that, unless they follow the procedures for opting out (described in paragraph 2.5 below), they will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a consent to join the Litigation and release of both their FLSA and state law claims, as set forth in this Agreement.

(C)     Within seven (7) days of receiving the Class List from Defendants, the Settlement Claims Administrator will mail to all FLSA Class Members who are not also California or New York Rule 23 Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.  The Notice shall inform the eligible FLSA Class Members of their eligibility to participate in the Settlement by signing and returning the enclosed consent form, and informing them of their approximate settlement allocations.  The consent form shall be a simple one-page form that requires the FLSA Class Member to provide only his or her name, signature, and date of signing; and which can be returned by email, fax, or U.S. Mail.  The Settlement Claims Administrator shall provide a postage prepaid return envelope with each FLSA Class Member's Notice (but not with California and New York Rule 23 Class Members' notices).  Eligible FLSA Class Members who are not also California and New York Rule 23 Class Members will only be bound by this Settlement and will only be entitled to receive a share of the Net Settlement Fund if they return their signed consent form postmarked within ninety (90) days from the mailing of the Notice to them and no later than one hundred twenty (120) days from the Preliminary Approval Order ("Consent Deadline").

(D)     The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     California and New York Rule 23 Class Member Opt-outs.**

(A)     California and New York Rule 23 Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First-Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of

the Merrill Lynch Field FSA overtime settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order (the "Opt-Out Deadline").

(B)    California and New York Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Preliminary Approval Order.  The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)    The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to California and New York Rule 23 Class Members.

(D)    The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements.  The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)    Any California and New York Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a consent to join the Litigation and a release of both their FLSA and state law claims, as set forth in this Agreement.

**2.6    Objections to Settlement.**

(A)    California and New York Rule 23 Class Members who wish to object to the settlement must do so in writing.  To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days from the mailing of the Notice to the California or New York Rule 23 Class Member and no later than sixty (60) days from the Preliminary Approval Order.  The written objection must include the words, "I object to the settlement in the Merrill Lynch Field FSA overtime litigation," as well as all reasons for the objection.  Any reasons not included in the written

objection will not be considered.  The written objection must also include the name, job title, address, and telephone numbers for the California or New York Rule 23 Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)    A California or New York Rule 23 Class Member who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the fairness hearing" in her written objection.  An Objector may withdraw his or her objections at any time.  No California or New York Rule 23 Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous section.  No California or New York Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A California or New York Rule 23 Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing, or within such other time periods as ordered by the Court.

2.7    Fairness Hearing; Motion for Judgment and Final Approval.  The Fairness Hearing shall be scheduled to occur no earlier than the Consent Deadline.  No less than eighteen (18) days before the Fairness Hearing, Plaintiffs will submit to Defendants for their review and comment a draft of the Motion for Judgment and Final Approval, and all supporting documents, including a proposed Final Approval Order and Judgment.  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

2.8    Entry of Judgment.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the California and New York Classes for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all California and New York Rule 23 Class Members who have not timely opted out pursuant to Section 2.5, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

2.9    Effect of Failure to Grant Final Approval.  In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as defined

herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by Plaintiffs in this action.

(B)    The Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C)    In the event that for any reason the Agreement does not receive final approval, the entire Gross Settlement Amount, including any interest accrued, shall remain the sole property of Defendant and any sums previously paid or distributed shall be returned to Defendants, with the parties to split the costs of Settlement Administration Costs incurred by the Settlement Claims Administrator.

**2.10   Releases and Consents to Join.**

(A)    A California or New York Rule 23 Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)    All Settlement Checks shall contain on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to 90 days from the date I was mailed this Settlement Check to sign and cash this Settlement Check.

By endorsing this check, I consent to join in the case entitled *Zeltser, et al., v. Merrill Lynch & Co., Inc., et al.*, No. 13 Civ. 1531 (FM), now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I might have for unpaid wages or overtime pay, or any other claim for violations of the federal or state wage and hour laws, relating to my

employment with Defendants as a Field Financial Services Advisor as defined in the Amended *Zeltser* Complaint up to and including April 30, 2014.

_____     Dated:_____

Signature

(C)     The Settlement Checks will be mailed to Class Members and attorneys' fees and costs checks mailed to Class Counsel by the Settlement Claims Administrator no later than seven (7) days after Defendants have deposited the funds in the QSF as described in Paragraph 3.1(B), below.  .

3.     **SETTLEMENT TERMS AND ADMINISTRATION**

3.1     **Settlement Amount.**

(A)     Defendants agree to pay up to a maximum gross amount of Six Million Nine Hundred Thousand and No/100ths Dollars ($6,900,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs and Litigation Opt-in Plaintiffs as more fully set forth herein, and the Settlement Claims Administrator's fees and costs.  Other than any employer payroll taxes described in Section 3.5(C) that are not otherwise paid out of the Gross Settlement Amount, Defendants will not be required to pay more than the gross total of Six Million Nine Hundred Thousand and No/100ths Dollars ($6,900,000.00) under the terms of this Agreement.

(B)     By no later than fifteen (15) days after the date of the Preliminary Approval Order, Defendants shall deposit Two Hundred Fifty Thousand Dollars ($250,000.00) into the QSF.  By no later than seven (7) days after the date of the Effective Date, Defendants shall deposit the remainder of the Gross Settlement Amount, minus any amount allocated to FLSA Class Members who are not also Rule 23 Class Members who do not submit a consent form as described in paragraph 2.4(C), into the QSF.  Any interest accrued from the QSF shall immediately be added to and become part of the Settlement Amount.  Class Members will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.  Defendants represent that Six Million Six Hundred Fifty Thousand Dollars ($6,650,000) will be set aside and available to transfer to the QSF within the time limits described above when and if the Court enters the Final Approval Order.

(C)     The Settlement Claims Administrator shall set aside $50,000.00 of the Gross Settlement Amount to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d).  If the amount set aside is insufficient to cover any correctible errors or omissions, the excess shall be funded from any amount subject to reversion. Any amount remaining 180 days after the Final Approval Order and after any correctable

errors or omissions are covered will be redistributed among the California and New York Rule 23 Class Members and Opt-in Plaintiffs who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

(D)     Any Settlement Checks to California Rule 23 Class Members and New York Rule 23 Class Members or Service Award checks uncashed 180 days after the Final Approval Order shall be redistributed among the respective California Rule 23 Class Members and New York Rule 23 Class Members who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

(E)     Any Settlement Checks to FLSA Class Members that remain uncashed 180 days after the Final Approval Order shall revert to Defendants.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses to be paid from the QSF.  Defendants will not oppose this application, so long as it is consistent with the provisions of this Agreement.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Roman Zeltser, Anna Tyutyunik, and Jared Brock will each apply to the Court to receive Twelve Thousand Five Hundred and No/100ths Dollars ($12,500.00) as a Service Award from the QSF, and Litigation Opt-in Plaintiffs Marc Steinberg, Teesta Kaur, Peter Cole, William Wesley, and John Jacobson will each apply to the Court to receive Four Thousand and No/100ths Dollars ($4,000.00) as a Service Award from the QSF.  The total amount of any Service Awards will be deducted from the Gross Settlement Amount.  Defendants will not oppose such applications, so long as they are consistent with the provisions of this Agreement.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of

the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4** **Net Settlement Fund and Allocation to Class Members.**

(A)    The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)    A Class Member's estimated proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)    Each California Class Member shall be assigned two (2) points for each week worked as a Field FSA between September 3, 2009 and April 30, 2014.

(2)    Each New York Class Member shall be assigned one and one-half (1.5) points for each week worked as a Field FSA between November 15, 2006 and April 30, 2014.

(3)    Each FLSA Class Member shall be assigned one point for each week worked as a Field FSA between November 15, 2009 and April 30, 2014.

(4)    To calculate each Class Member's proportionate share:

(a)    Add all points for Class Members together to obtain the "Total Denominator;"

(b)    Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

(c)    Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

**3.5** **Tax Characterization.**

(A)    For tax purposes, 50% of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B)    Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the

payee's name and Social Security Number on an IRS Form W-2.  Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.  Any service payment pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     All state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, will be paid first out of the amount of the Net Settlement Fund, if any, retained by or reverting to Defendants.  If the payroll taxes due as a result of wage payments exceeds the amount of the Net Settlement Fund retained by or reverting to Defendants, then Defendants shall then deposit the estimated amount remaining due in the interesting-bearing account established by the Settlement Claims Administrator within the time limits set forth in Paragraph 3.1(B).

(D)     Plaintiffs acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendants and the Settlement Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendants or the Settlement Claims Administrator as a result of a Plaintiffs' failure to timely pay such taxes.

(E)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.

**3.5     No Effect on Benefit Plans.**  No employee benefit provided by Defendants to Named Plaintiffs or any Class Members, including but not limited to any 401k benefits, shall increase or accrue as a result of any payment made in accordance with this Agreement

**4.     RELEASE**

**4.1     Release of Claims.**

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)     Each individual California Rule 23 Class Member who does not timely opt out pursuant to this Agreement forever and fully releases the Released Parties from all wage and hour claims asserted under state law by and on behalf of the State Sub-Class (the "Released California Rule 23 Claims").  The Released California

Rule 23 Claims include all claims under the state laws of California for unpaid regular or overtime wages, straight-time wages, or minimum wages, any related wage and hour claims, claims for missed or legally non-compliant meal and rest breaks, all derivative benefit claims (both ERISA and non-ERISA benefits), all derivative claims (including, but not limited to, claims under Cal. Lab. Code §§ 201-203, 204, 212, 226, 226.3, 226.7, 510, 512, 515, 558, 1194, 1198, 2698, *et seq.* and Cal. Bus. & Prof. Code § 17200), penalties (including civil penalties) arising out of any such claims, interest on such claims, and attorneys' fees and costs related to such claims relating to California Rule 23 Class Members' employment with Defendants as Field FSAs from September 3, 2009, through and including the April 30, 2014.

(B)     Each individual New York Rule 23 Class Member who does not timely opt out pursuant to this Agreement forever and fully releases the Released Parties from all wage and hour claims asserted under state law by and on behalf of the State Sub-Class (the "Released New York Rule 23 Claims"). The Released New York Rule 23 Claims include all claims under the New York Labor Law, all other state laws of New York, or any municipal or local law for unpaid regular or overtime wages, straight-time wages, or minimum wages, any related or derivative wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), penalties arising out of any such claims, interest on such claims, and attorneys' fees and costs related to such claims relating to Rule 23 Class Members' employment with Defendants as Field FSAs from November 15, 2006, through and including April 30, 2014.

(C)     In addition to the Released California and New York Rule 23 Claims, by signing and cashing the Settlement Checks, all California and New York Rule 23 Class Members who do not timely opt-out, and all Opt-in Plaintiffs forever and fully release the Released Parties from all FLSA claims asserted in the Litigation ("Released FLSA Claims"). The Released FLSA Claims include all FLSA claims for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, liquidated damages, penalties, and attorneys' fees and costs related to such claims relating to Rule 23 Class Members' and Opt-in Plaintiffs' employment with Defendants as Field FSAs from November 15, 2009, through and including April 30, 2014.

(D)     In order to achieve a full and complete release for the benefit of the Released Parties of all claims arising from or related to the Litigation, each individual California Rule 23 Class Member and New York Rule 23 Class Member who does not timely out and all Opt-in Plaintiffs will be deemed to have acknowledged that this Agreement is intended to include in its effect all claims that were asserted or reasonably could have been asserted in this action, including any claims that each California Rule 23 Class Member, New York Rule 23 Class Member, and Opt-in Plaintiff does not know or suspect to exist in his or her favor against the Released Parties. Consequently, with regard to claims that were brought or that reasonably could have arisen out of the same

facts alleged in the Litigation, the California Rule 23 Class Members, New York Rule 23 Class Members, and Opt-in Plaintiffs also waive all rights and benefits afforded by Section 1542 of the Civil Code of the State of California (and any other similar statute of other any other state), and do so understanding the significance of that waiver.  Section 1542 provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

(E)     Named Plaintiffs, Litigation Opt-in Plaintiffs, California Rule 23 Class Members, New York Rule 23 Class Members, and Opt-in Plaintiffs shall also be deemed to have acknowledged and agreed that: (1) the claims being released by this Agreement are disputed; and (2) the payments set forth herein constitute full payment of any amounts allegedly due to them for the claims being released by this Agreement.  In light of the payment by Defendants of all amounts due to them, the Named Plaintiffs, Litigation Opt-in Plaintiffs, and each and every California Rule 23 Class Member, New York Rule 23 Class Member, and Opt-in Plaintiff shall be deemed to have acknowledged and agreed that Cal. Lab. Code § 206.5 (and any other similar statute of any other state) is not applicable to the Parties hereto.  That section provides in pertinent part as follows:

An employer shall not require the execution of any release of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.

(F)     Each and every California Rule 23 Class Member, New York Rule 23 Class Member, and Opt-in Plaintiff shall be deemed to have made the release and representations contained in this Paragraph 4.1 and each subparagraph as if by manually signing them.

(G)     In addition to the Released California and New York Rule 23 Claims and Released FLSA Claims, by signing and cashing their Settlement Checks, all Named Plaintiffs receiving a Service Award forever and fully release the Released Parties from any and all claims, promises, debts, causes of action or similar rights of any type or nature they have or had against the Released Parties for any and all causes of action, obligations, costs, damages, losses, claims, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, of any kind or nature whatsoever, now existing or arising in the future from any act, omission, event, occurrence, or nonoccurrence that arise out of or relate to Named Plaintiffs' employment with Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation, and/or any of the Released Parties to the date of the execution of this Agreement, including but not limited to those which in any way arise out of or relate to:

(a) Named Plaintiffs' employment with Defendants, or the termination of their respective employment, such as claims for compensation, bonuses, commissions, lost wages, unused accrued vacation, sick pay or failure to provide or take meal or rest periods, reimbursement of expenses, interest or penalties; (b) the design or administration of any employee benefit program or Named Plaintiffs' respective entitlement to benefits under any such program; (c) any rights Named Plaintiffs have to severance or similar benefits under any program, policy or procedure of Defendants; (d) any rights Named Plaintiffs may have to the continued receipt of health or life insurance-type benefits; (e) any claims to attorneys' fees or other indemnities; and (g) any other claims or demands Named Plaintiffs may have on any basis under any state or federal law relating to Named Plaintiffs' employment with Defendants.

(H)     Except as provided in this Agreement, Class Counsel, Named Plaintiffs, and Litigation Opt-in Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**4.2     Non-Admission of Liability.**  Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefits to Defendants' shareholders, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest.  Nothing in this agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

## 5.     VOIDING THE SETTLEMENT AGREEMENT

**5.1**     If the Court does not approve any material condition of this Agreement or effects a fundamental change of the Agreement, the entire Agreement will be voidable and unenforceable.  The Parties expressly agree that the Court's approval or denial of any request for attorneys' fees and costs or Service Awards are not material conditions to this agreement, and are to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement.  Any order or proceeding relating to the application by Class Counsel for an award for fees and costs or for Service Awards, shall not operate to terminate or cancel this agreement.

**5.2**     If more than ten percent (10%) of the California Rule 23 Class Members, ten percent (10%) of the New York  Rule 23 Class Members, or twenty percent (20%) of the total California Rule 23 Class Members and New York Rule 23 Class Members timely opt out of the Agreement, then Defendants may withdraw from and void this Agreement by

providing notice to Class Counsel within seven (7) calendar days after the Claims Administrator provides the parties with a final list of all Class Members who have opted out of the settlement.

**5.3**    The Parties agree not to encourage any member or group of the Plaintiff Class to opt out of the Agreement or object to the Agreement.

## 6.    PROHIBITION ON PRESS AND PUBLICITY

The Parties and their respective counsel agree that they will not issue any press releases or press statements or otherwise publicize the terms of this Agreement in any medium, including but not limited to internet blogs or chat rooms, Facebook, or a law firm website, prior to the entry by the Court of a Preliminary Approval Order.  If counsel for either party receives an inquiry about settlement from the media, counsel may respond only after the Motion for Preliminary Approval has been filed and only by confirming the terms of the Agreement, or, in the case of Plaintiffs' Counsel, by stating the following, or something substantially similar: "We are pleased that class members will be compensated without incurring the expense or risk of further litigation."  This paragraph shall not prevent Class Counsel or the Settlement Claims Administrator from setting up a website to provide all settlement documents, other case-related documents, and information about the settlement and settlement process online for review by Class Members. Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement.

## 7.    INTERPRETATION AND ENFORCEMENT

**7.1**    Cooperation Between the Parties; Further Acts.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**7.2**    No Assignment.  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**7.3**    Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**7.4**    Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-in Plaintiffs, and all Class Members, their spouses,

children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

7.5   Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

7.6   Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

7.7   Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.8   Blue Penciling/Severability.  If any non-material provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

7.9   Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

7.10   Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

7.11   Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

7.12   CAFA Notice.  Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

7.13   When Agreement Becomes Effective; Counterparts.  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts,

and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**7.14**   Signatures of Named Plaintiffs.   This Agreement is valid and binding if signed by Defendants' authorized representative and at least one Named Plaintiff and any Named Plaintiff's failure to sign the Agreement does not nullify the Agreement.

**7.15**   Facsimile and Email Signatures.   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: 5/6 , 2014            **MERRILL LYNCH & CO., INC.**

By: _____

Its: _____

DATED: 5/6 , 2014            **BANK OF AMERICA CORPORATION**

By: _____

Its: _____

DATED: 5/6, 2014

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**

By: _____

Its: DVP & Associate General Counsel
Bank of America

DATED: 5/6/2014                **ROMAN ZELTSER**

_____

DATED: _____, 2014           **ANNA TYUTYUNIK**

_____

DATED: _____, 2014           **JARED BROCK**

_____

DATED: _____, 2014           **MARC STEINBERG**

_____

DATED: _____, 2014           **TEESTA KAUR**

_____

DATED: _____, 2014           **PETER COLE**

_____

DATED: _____, 2014           **WILLIAM WESLEY**

_____

DATED: _____, 2014           **JOHN JACOBSON**

_____

DATED: _____, 2014          **ROMAN ZELTSER**

_____

DATED: May 6, 2014           **ANNA TYUTYUNIK**

_____

DATED: _____, 2014          **JARED BROCK**

_____

DATED: _____, 2014          **MARC STEINBERG**

_____

DATED: _____, 2014          **TEESTA KAUR**

_____

DATED: _____, 2014          **PETER COLE**

_____

DATED: _____, 2014          **WILLIAM WESLEY**

_____

DATED: _____, 2014          **JOHN JACOBSON**

_____

DATED: _____, 2014      **ROMAN ZELTSER**

DATED: _____, 2014      **ANNA TYUTYUNIK**

DATED: 5/6, 2014      **JARED BROCK**

DATED: _____, 2014      **MARC STEINBERG**

DATED: _____, 2014      **TEESTA KAUR**

DATED: _____, 2014      **PETER COLE**

DATED: _____, 2014      **WILLIAM WESLEY**

DATED: _____, 2014      **JOHN JACOBSON**

DATED: _____, 2014          **ROMAN ZELTSER**

_____

DATED: _____, 2014          **ANNA TYUTYUNIK**

_____

DATED: _____, 2014          **JARED BROCK**

_____

DATED: May 6 , 2014          **MARC STEINBERG**

_____

DATED: _____, 2014          **TEESTA KAUR**

_____

DATED: _____, 2014          **PETER COLE**

_____

DATED: _____, 2014          **WILLIAM WESLEY**

_____

DATED: _____, 2014          **JOHN JACOBSON**

_____

DATED: _____, 2014      **ROMAN ZELTSER**

DATED: _____, 2014      **ANNA TYUTYUNIK**

DATED: _____, 2014      **JARED BROCK**

DATED: _____, 2014      **MARC STEINBERG**

DATED: 5|6, 2014      **TEESTA KAUR**

DATED: _____, 2014      **PETER COLE**

DATED: _____, 2014      **WILLIAM WESLEY**

DATED: _____, 2014      **JOHN JACOBSON**

DATED: _____, 2014      **ROMAN ZELTSER**

DATED: _____, 2014      **ANNA TYUTYUNIK**

DATED: _____, 2014      **JARED BROCK**

DATED: _____, 2014      **MARC STEINBERG**

DATED: _____, 2014      **TEESTA KAUR**

DATED: May 6, 2014      **PETER COLE**

DATED: _____, 2014      **WILLIAM WESLEY**

DATED: _____, 2014      **JOHN JACOBSON**

DATED: _____, 2014          **ROMAN ZELTSER**

_____

DATED: _____, 2014          **ANNA TYUTYUNIK**

_____

DATED: _____, 2014          **JARED BROCK**

_____

DATED: _____, 2014          **MARC STEINBERG**

_____

DATED: _____, 2014          **TEESTA KAUR**

_____

DATED: _____, 2014          **PETER COLE**

_____

DATED: 5/6 , 2014          **WILLIAM WESLEY**

_____

DATED: _____, 2014          **JOHN JACOBSON**

_____

DATED: _____, 2014          **ROMAN ZELTSER**

_____

DATED: _____, 2014          **ANNA TYUTYUNIK**

_____

DATED: _____, 2014          **JARED BROCK**

_____

DATED: _____, 2014          **MARC STEINBERG**

_____

DATED: _____, 2014          **TEESTA KAUR**

_____

DATED: _____, 2014          **PETER COLE**

_____

DATED: _____, 2014          **WILLIAM WESLEY**

_____

DATED: 5/6, 2014          **JOHN JACOBSON**