**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**THE YOUNG LAW FIRM, P.C.**
Jeremi K. Young (admitted *pro hac vice*)
1001 S. Harrison, Suite 200
Amarillo, Texas  79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROMAN ZELTSER, ANNA TYUTYUNIK, and JARED BROCK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>Defendants. | No. 13 Civ. 1531 (FM) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
## CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

I.      Factual Allegations ................................................................................................. 2

II.     Overview of Investigation ...................................................................................... 2

III.    Procedural History .................................................................................................. 3

IV.     CAFA Notice .......................................................................................................... 4

SUMMARY OF THE SETTLEMENT TERMS .............................................................. 4

I.      The Settlement Fund ............................................................................................... 4

II.     Eligible Employees ................................................................................................. 5

III.    Releases ................................................................................................................... 5

IV.     Allocation Formula ................................................................................................. 5

V.      Attorneys' Fees, Litigation Costs, and Service Awards ......................................... 7

VI.     Settlement Claims Administration .......................................................................... 7

ARGUMENT ...................................................................................................................... 7

I.      The Settlement Class Meets the Legal Standard for Class Certification ............... 7

        A.      Numerosity .................................................................................................. 8

        B.      Commonality ............................................................................................... 9

        C.      Typicality .................................................................................................. 10

        D.      Adequacy of the Named Plaintiffs ........................................................... 10

        E.      Certification Is Proper Under Rule 23(b)(3) ............................................ 11

                1.      Common Questions Predominate ................................................. 12

                2.      A Class Action Is a Superior Mechanism .................................... 12

II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved
       in All Respects ................................................................................................................... 13

       A.    The Proposed Settlement Is Procedurally Fair ......................................................... 14

       B.    The Proposed Settlement Is Substantively Fair ....................................................... 16

             1.    Litigation Through Trial Would be Complex, Costly, and Long
                   (*Grinnell* Factor 1) ...................................................................................... 17

             2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 17

             3.    Discovery Has Advanced Far Enough to Allow the Parties to
                   Resolve the Case Responsibly (*Grinnell* Factor 3) ................................... 18

             4.    Plaintiffs Would Face Real Risks if the Case Proceeded
                   (*Grinnell* Factors 4 and 5) ......................................................................... 20

             5.    Maintaining the Class Through Trial Would Not Be Simple
                   (*Grinnell* Factor 6) ...................................................................................... 21

             6.    KeyBank's Ability to Withstand a Greater Judgment Is Not
                   Determinative (*Grinnell* Factor 7) ............................................................. 22

             7.    The Settlement Fund Is Substantial, Even in Light of the Best
                   Possible Recovery and the Attendant Risks of Litigation
                   (*Grinnell* Factors 8 and 9) ......................................................................... 22

III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law ............................ 24

       CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................................11, 13

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ..............................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78.............17, 19, 20

*Blackmon v. Brookshire Grocery Co.*,
    835 F.2d 1135 (5th Cir. 1988) ..................................................................................24

*Hoffmann-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)...................................................................................................25

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................23

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)............................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*Clark v. Ecolab, Inc.*,
    Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (Nov. 27,
    2009) ..........................................................................................................................12

*Clark v. Ecolab Inc.*,
    Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
    May 11, 2010).............................................................................................................9

*Clements v. Serco, Inc.*,
    530 F.3d 1224 (10th Cir. 2008) ................................................................................24

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..........................................................................................8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...................................................................................14, 15

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ...........................................................................................7

*Desmond v. PNGI Charles Town Gaming, LLC,*
    630 F.3d 351 (4th Cir. 2011) ........................................................................................24

*Diaz v. E. Locating Serv., Inc.,*
    No. 10 Civ. 4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) ...........................................10

*Diaz v. E. Locating Serv. Inc.,*
    No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .....................................16, 20

*Dziennik v. Sealift, Inc.,*
    No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
    No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................15

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................ *passim*

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982).......................................................................................................9

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000)...........................................................................................16

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968)..........................................................................................12

*Henry v. Quicken Loans, Inc.,*
    698 F.3d 897 (6th Cir. 2012) ........................................................................................21

*Hernandez v. Merrill Lynch & Co., Inc.,*
    No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ........................................16

*In re Interpublic Sec. Litig.,*
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .........................................16

*In re Ira Haupt & Co.,*
    304 F. Supp. 917 (S.D.N.Y. 1969)..................................................................................20

*Johnson v. Brennan,*
    No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)..............................11, 13, 20

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
    109 F.R.D. 391 (S.D.N.Y. 1986) ......................................................................................9

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)......................................18, 20

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ........................................................................................25

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................17

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)...............................................................................................10

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011) .............................................................................................22

*Matheson v. T-Bone Rest., LLC*,
No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)..........................................19

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................................12

*McKenna v. Champion Intern. Corp.*,
747 F.2d 1211 (8th Cir. 1984) ...........................................................................................25

*McMahon v. Olivier Cheng Catering & Events*,
LLC, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)..............................11, 20

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
471 F.3d 24 (2d Cir. 2006)..................................................................................................12

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012).................................................................................11

*Myers v Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)................................................................................................22

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) .............................................................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................................20

*Perkins v. S. New England Tel., Co.*,
No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) .........................................24

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ...........................................................................................8

*Reyes v. Altamarea Grp., LLC*,
　　No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ........................13, 14, 15, 25

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
　　No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003)........................................18

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993)...........................................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
　　798 F.2d 590 (2d Cir. 1986)...........................................................................................11

*Sewell v. Bovis Lend Lease, Inc.*,
　　No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).........................................9

*Spann v. AOL Time Warner, Inc.*,
　　No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)...........................................14

*In re Top Tankers, Inc. Sec. Litig.*,
　　No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................15

*Toure v. Amerigroup Corp.*,
　　No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)..........................................14

*Toure v. Cent. Parking Sys. of N.Y.*,
　　No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)........................................11

*Urnikis–Negro v. Am. Family Prop. Servs.*,
　　616 F.3d 665 (7th Cir. 2010) .........................................................................................24

*Valerio v. Putnam Assocs. Inc.*,
　　173 F.3d 35 (1st Cir. 1999)............................................................................................24

*Velez v. Majik Cleaning Serv., Inc.*,
　　No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).........................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
　　280 F.3d 124 (2d Cir. 2001)......................................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005)........................................................................................14, 15

*In re Warfarin Sodium Antitrust Litig.*,
　　391 F.3d 516 (3d Cir. 2004)...........................................................................................19

*Willix v. Healthfirst, Inc.*,
　　No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................................18

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................18

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)......................................................................21

**Statutes**

28 U.S.C. § 1715(d) ...................................................................................................4

29 U.S.C. § 216(b) ...............................................................................................3, 21

29 U.S.C. § 255 .......................................................................................................21

California Business and Professions Code §§ 17200 *et. seq.* .......................................2

California Labor Code §§ 201-203 ..............................................................................2

New York Labor Law, Article 19, §§ 650 *et. seq.* .......................................................2

**Other Authorities**

Fed. R. Civ. P. 23(a)(1)..............................................................................................8

Fed. R. Civ. P. 23(a)(4)............................................................................................11

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").  The parties' settlement of up to $6,900,000 in this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Declaration");[1] and (3) approving the FLSA Settlement.

On May 12, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.  Swartz Decl. ¶ 40; ECF No. 74.  Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  No Class Member has objected to the settlement, and only one Rule 23 Class Member has opted out.  Ex. B (Decl. of Mark Patton ("Patton Decl.")) ¶¶ 7-8; Ex. C (Rule 23 Notice); Ex. D (FLSA Notice).  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]         Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.        Factual Allegations

Plaintiffs and Class Members are current and former employees of Merrill who have

worked as Field Financial Solutions Advisors ("Field FSAs")[2] or in similar positions with

comparable titles at Bank of America retail banking centers nationwide.  Plaintiffs alleged that

Merrill violated the Fair Labor Standards Act ("FLSA"); the New York Labor Law, Article 19,

§§ 650 *et. seq.,* and the supporting New York State Department of Labor regulations ("NYLL");

and California Wage Order 4-2001, California Labor Code §§ 201-203; 218.5, 226, 226.7, 510,

512, 1174, 1174.5 and 1194, and California Business and Professions Code §§ 17200 *et. seq.* and

related regulations (collectively referred to as the "California Wage Laws") by improperly

classifying Field FSAs as exempt and requiring them to work in excess of 40 hours per

workweek without overtime premium pay.  Swartz Decl. ¶¶ 8-9.  Plaintiffs sought recovery of

overtime wages, attorneys' fees and costs, interest, and liquidated damages.  *Id.*

### II.       Overview of Investigation

Before and during the formal litigation of this action, Plaintiffs conducted a thorough

investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶¶ 4-7.  Plaintiffs

focused their investigation and legal research on the underlying merits of Class Members'

claims, the damages to which they were entitled, and the propriety of class certification.  *Id.* ¶ 5.

Plaintiffs' counsel interviewed Plaintiffs and several other workers to determine the hours that

they worked, the wages they were paid, the nature of their duties and responsibilities, and other

information relevant to their claims.  *Id.* ¶ 6.  Plaintiffs also conducted in-depth background

research on Merrill, including reviewing SEC filings and other public documents, to obtain

---

[2]        Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

information on Merrill's corporate structure and facilities.   *Id.* ¶ 7.   Plaintiffs also obtained

numerous job postings for the Field FSA positions to determine the nature of the duties and

responsibilities of the positions.   *Id.*   Plaintiffs and Opt-in Plaintiffs Marc Steinberg, Teesta Kaur,

Peter Cole, William Wesley, and John Jacobson provided detailed declarations regarding their

hours worked, their wages paid, and the nature of their duties and responsibilities.   *Id.* ¶ 38.

Plaintiffs also reviewed over 1,700 pages of documents produced by Merrill regarding Plaintiffs

and Opt-in Plaintiffs, as well as Merrill's company-wide policies and practices.   *Id.* ¶ 11.

### III.   <u>Procedural History</u>

On March 7, 2013, Plaintiffs Roman Zeltser and Anna Tyutyunik filed a Class Action

Complaint against Defendants, pursuant to 29 U.S.C. § 216(b), in the United States District

Court for the Southern District of New York on behalf of themselves and others similarly

situated.   Swartz Decl. ¶ 8.   Plaintiffs alleged that Defendants violated the FLSA and the New

York Labor Law and supporting New York State Department of Labor Regulations ("NYLL")

by misclassifying Field FSAs as exempt employees and failing to pay them overtime wages in

violation of state wage and hour laws.   Plaintiffs sought recovery of overtime wages, attorneys'

fees, costs, interest, and liquidated damages.   *Id.*

On September 3, 2013, Plaintiffs filed an Amended Complaint adding an additional

Named Plaintiff, Jared Brock, and claims under the California Wage Laws.   *Id.* ¶ 9.   Defendants

filed their answer to the Amended Complaint on September 17, 2013.   *Id.*   In addition to the

three Named Plaintiffs, six other current and former Field FSAs also joined the case as Opt-in

Plaintiffs.   *Id.* ¶ 10.

On or about November 12, 2013, the parties agreed to attend mediation in an attempt to

resolve the litigation.   *Id.* ¶ 13.   To enable Plaintiffs to perform damages calculations, Merrill

produced data showing the number of class members, salaries and other non-discretionary compensation, weeks worked, and location of employment.  *Id.* ¶ 14.  Plaintiffs performed damages calculations based on the data Defendants provided.  *Id.*

On January 21, 2014, the parties attended a mediation session in San Francisco, California, with David Rotman, a well-known and experienced mediator.  *Id.* ¶ 15.  After a full day of mediation, Mr. Rotman made a mediator's proposal to resolve the matter.  *Id.* ¶ 16.  While considering the mediator's proposal, the parties continued to coordinate expedited discovery, and on January 30, 2014, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.  *Id.* ¶¶ 17-18.

On February 19, 2014, Mr. Rotman informed the parties that both sides had accepted the terms of the mediator's proposal.  *Id.* ¶ 19.  During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement").  *Id.* ¶ 20.

## IV.   **CAFA Notice**

Merrill sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on May 16, 2014.  *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 41.  The 90-day CAFA notice period concluded on August 14, 2014.  Swartz Decl. ¶ 41.

## SUMMARY OF THE SETTLEMENT TERMS

### I.   **The Settlement Fund**

The Settlement Agreement establishes a gross settlement amount of up to $6,900,000 to settle claims against the Defendants (the "Fund").  Ex. A (Settlement Agreement) § 3.1(A).  The Fund covers Class Members' awards, service awards, attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with setting up, administering, maintaining or liquidating the Fund.  Swartz Decl. ¶ 42. Under the terms of the settlement

4

agreement, Defendants deposited $250,000 into the Settlement Fund fifteen days after the Court granted preliminary approval.  Ex. A, § 3.1(B).  Within seven days of the Effective Date, Defendants shall deposit the remainder of the Gross Settlement Amount, minus any amount allocated to those FLSA Class Members who are not also Rule 23 Class Members and who do not submit a consent to join form.  *Id.*

## II.   **Eligible Employees**

The "California Rule 23 Class" includes all current and former Field FSAs employed by Defendants in retail banking centers in the State of California between September 3, 2009 and April 30, 2014, and the "New York Rule 23 Class" includes all current and former Field FSAs employed by Defendants in retail banking centers in the State of New York between November 15, 2006 and April 30, 2014.  *Id.* §§ 1.3, 1.21.  The "FLSA Class" includes all current and former Field FSAs employed by Merrill in retail banking centers throughout the United States between November 15, 2009 and April 30, 2014.  *Id.* § 1.16.

## III.   **Releases**

All FLSA Class Members who sign and cash a Settlement Check and all Rule 23 Class Members who did not timely opt out will release all federal wage and hour law claims.  *Id.* §§ 2.10, 4.1(C).   All Rule 23 Class Members who did not timely opt-out release all state wage and hour claims asserted on behalf of the Rule 23 Class, regardless of whether they sign and cash a Release, Consent, and Settlement Check.  *Id.* § 4.1(A), (B).

## IV.   **Allocation Formula**

Class Members will be paid pursuant to an allocation formula based on the number of weeks they worked during the relevant periods and the state in which they worked.

Each California Class Member shall be assigned two points for each week worked as a Field FSA between September 3, 2009 and April 30, 2014. *Id.* § 3.4(B)(1). Each New York Class Member shall be assigned one and one-half points for each week worked as a Field FSA between November 15, 2006 and April 30, 2014. *Id.* § 3.4(B)(2). All other FLSA Class Members shall be assigned one point for each week worked as a Field FSA between November 15, 2009 and April 30, 2014. *Id.* § 3.4(B)(3). The Claims Administrator will then divide the total number of points for each Class Member by the total number of points for all Class Members to determine each Class Member's portion of the Net Settlement Fund. *Id.* § 3.4(B)(4). The Claims Administrator will then multiply each Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine the amount to be paid to each Class Member. *Id.* § 3.4(B)(1)(d). The greater number of points allocated to California Class Members reflects the value of additional claims and monetary remedies available under California law not available under other states' laws, as well as the greater likelihood of prevailing on the merits under California law, because of the requirement under California law that exempt employees perform exempt duties more than 50% of the time. The greater number of points allocated to New York Class Members reflects the fact that New York Class Members are entitled to liquidated damages under the NYLL in addition to liquidated damages under the FLSA.

Any uncashed settlement checks to FLSA Class Members remaining in the Fund 180 days after the Final Approval Order will revert to Defendants. *Id.* § 3.1(E). If uncashed settlement checks to California Rule 23 Class Members or New York Rule 23 Class Members or Service Awards remain in the Fund 180 days after the Final Approval Order, the funds will be redistributed among the respective California Rule 23 Class Members and New York Rule 23 Class Members who have timely cashed their checks or, if the amount remaining is small enough

that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

### V. Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel have filed a Motion for Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

### VI. Settlement Claims Administrator

Plaintiffs have selected Settlement Services, Inc. as the Settlement Claims Administrator ("Claims Administrator"). Swartz Decl. ¶ 46. On June 5, 2014, the Claims Administrator mailed the Court-approved Notices to approximately 1,492 Class Members whose names and addresses were provided by Merrill. Ex. B (Patton Decl.) ¶ 4. After the Notices were mailed, the Claims Administrator received 225 Notices returned as undeliverable by the Post Office without updated addresses. *Id.* ¶ 6. No new addresses were found for 12 Class Members. *Id.* Notices were re-mailed to Class Members for whom new addresses were located. *Id.*

The Rule 23 Notice advised Rule 23 Class Members, among other things, that they could object to or exclude themselves from the settlement. Ex. C (Rule 23 Notice). No Class Member has objected to the Settlement. Ex. B (Patton Decl.) ¶ 8. Only one Rule 23 Class Member has opted out of the settlement. *Id.* ¶ 7.

### ARGUMENT

### I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). On May 12, 2014, the Court preliminarily certified the settlement classes. The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Plaintiffs respectfully request that the Court

certify the California Rule 23 Class and the New York Rule 23 Class for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy the numerosity requirement because there are approximately 599 Rule 23 Class Members.  Swartz Decl. ¶ 47.

B.    **Commonality**

The proposed classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.  Even where state and federal wage and hour claimants do not share "exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments."  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012).

This case involves many common issues.  Plaintiffs and Class Members all bring the identical claims that Defendants misclassified Field FSAs as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws.  Other common issues include, but are not limited to, (a) whether Defendants maintained true and accurate time records for all hours worked by Plaintiffs and Class Members; (b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and (c) whether Defendants acted willfully or in reckless disregard of the statute.  *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues in overtime misclassification case included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over

40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours

[p]laintiffs and the state settlement [c]lass [m]embers worked")).

### C.      Typicality

Typicality is also satisfied because "each class member's claim arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's

liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted).  "Like the

commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members." *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact

patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931,

936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the

basis of the Rule 23 Class Members' claims.  Defendants classified all Plaintiffs and Class

Members as exempt from overtime pursuant to the same company policy.  Plaintiffs shared the

same job title and job duties as Class Members.  They also claim the same injuries as do Class

Members – that Defendants failed to properly pay them for overtime hours worked.  Because

Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Class

Members' claims, Plaintiffs satisfy the typicality requirement.  *See Diaz v. E. Locating Serv.,*

*Inc.*, No. 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) ("Plaintiffs satisfy

Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual

and legal circumstances that form the bases of the class members' claims.").

### D.      Adequacy of the Named Plaintiffs

Plaintiffs are adequate class representatives because they have "fairly and adequately

protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement

exists to ensure that the named representatives will have an interest in vigorously pursuing the

claims of the class, and . . . have no interests antagonistic to the interests of other class

members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7

(S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *McMahon v. Olivier Cheng*

*Catering & Events,* LLC, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010).

"[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim

of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6

(E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  There is no evidence that the

Plaintiffs' and Class Members' interests are at odds.  *See Morris v. Affinity Health Plan, Inc.*,

859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (finding adequacy requirement met where there was

no evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*, No.

10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

### E.      Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any

questions affecting only individual members and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This

inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of

Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.    **Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them for overtime hours – predominate over any factual or legal variations among class members. *See Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (Nov. 27, 2009) (finding common factual allegations and common legal theory to predominate over variations among class members in misclassification case).

### 2.    **A Class Action Is a Superior Mechanism.**

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to

bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[3]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.  *See Johnson*, 2011 WL 4357376, at *7; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011).  Plaintiffs and the class members have limited financial resources with which to prosecute individual actions and Plaintiffs are unaware of any pending individual lawsuits filed by Class Members arising from the same allegations for the same category of employees.  Concentrating the litigation in this Court is desirable because Merrill's headquarters sit within the jurisdiction of this Court.

Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications.  *See Johnson*, 2011 WL 1872405, at *2.

II.     **The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To

---

[3]          Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").  When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5.  Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes*, 2011 WL 4599773, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also*

14

*D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute

[their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls.*

*Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27,

2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3

(S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and

evaluated the claims and defenses, and after extensive arm's-length negotiations and information

exchange between the parties.  Swartz Decl. ¶¶ 4-7; 13-21.  Merrill produced data relating to

Class Members' compensation to enable Plaintiffs to perform detailed damages calculations.  *Id.*

¶ 14.  The parties attended an all-day mediation with an experienced employment law mediator

on January 21, 2014, during which they engaged in a vigorous exchange regarding their

respective claims and defenses.  *Id.* ¶ 15.  The parties did not settle during the mediation, but

instead continued to coordinate expedited discovery; in addition, Plaintiffs filed a Motion for

Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.

*Id.* ¶¶ 17-18.  A few weeks later, the parties accepted a settlement proposal recommended by the

mediator, and spent several additional weeks negotiating the remaining terms of the settlement.

*Id.* ¶¶ 19-20.  The settlement agreement was finally executed on May 6, 2014.  *Id.* ¶ 20, Ex. A

(Settlement Agreement).  At all times during the settlement process, the parties negotiated on an

arm's-length basis.  Swartz Decl. ¶ 21.  These arm's-length negotiations involved counsel and a

mediator well-versed in wage and hour law, raising a presumption that the settlement achieved

meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116-17; *Reyes*, 2011

WL 4599822, at *4.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *2 (S.D.N.Y. Mar. 21, 2013) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when "warranted by the circumstances of the case"). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

## B.      The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"), *aff'd sub. nom. D'Amato*, 236 F.3d 78 (citation omitted).  This case is no exception, with approximately 599 Class Members and claims under federal and state law.  Swartz Decl. ¶ 47.

Further litigation would cause additional expense and delay.  Extensive discovery would be required to establish liability and damages.  In addition, the parties likely would file cross-motions for summary judgment on Merrill's exemption defense.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class Members' exemption status.  A trial would be lengthy and complex and would consume tremendous time and resources for all parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be

taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (internal quotation marks omitted)).

Here, the Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award.  Ex. C (Rule 23 Notice) ¶¶ 7-8; Ex. D (FLSA Notice) ¶¶ 7-8.  The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the settlement and explained how to do so.  Ex. C (Rule 23 Notice) ¶¶ 12, 17-18.  No Class Member objected to the settlement.  Ex. B (Patton Decl.) ¶ 8. Only one Rule 23 Class Member opted out of the settlement.  *Id.* ¶ 7.  Class Counsel also received numerous phone calls and emails from Class Members who reacted very positively to the settlement.  Swartz Decl. ¶ 48.  This favorable response demonstrates that the class approves of the settlement, which further supports final approval.  *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (final approval warranted where no class members objected and two opted out); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

> ### 3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of additional discovery for both sides, the parties have already completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d

Cir. 2004) (citation omitted).  "[P]retrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement [,] [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (internal quotation marks omitted)).

The discovery here meets this standard.  Plaintiffs' counsel interviewed the three Named Plaintiffs and six Opt-in Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. Swartz Decl. ¶ 6.  Plaintiffs conducted in-depth background research on Merrill, including reviewing SEC filings and other public documents, to obtain information on Merrill's corporate structure and facilities.  *Id.* ¶ 7.  Plaintiffs also obtained numerous job postings for the Field FSA position from across the country to determine the nature of the duties and responsibilities of the position.  *Id.*  Plaintiffs reviewed over 1,700 pages of documents that were produced by Defendants in response to Plaintiffs' document requests.  *Id.* ¶ 11.  Plaintiffs also produced documents to Defendants and responded to Defendants' interrogatories.  *Id.* ¶ 12.  To allow Plaintiffs to perform damages calculations in preparation for mediation, Defendants produced data showing the number of Class Members, average salaries, weeks worked, and location of employment.  *Id.* ¶ 14.

Courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case.  *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to

evaluate the strengths and weaknesses of the case" and granting final approval where parties

engaged in informal discovery and no depositions were taken); *Diaz*, 2010 WL 5507912, at *5

(granting final approval of pre-suit class settlement, where informal discovery consisted of pre-

suit document exchange); *McMahon*, 2010 WL 2399328, at *5 (granting final approval where

parties conducted informal discovery); *Khait*, 2010 WL 2025106, at *6 (approving settlement

where parties conducted informal discovery).  The significant amount of discovery conducted

here allowed the parties to thoroughly assess the merits and risks of the case and to calculate

damages.  Therefore, this factor favors final approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934

(S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL

7232783, at *6 (S.D.N.Y. June 25, 2007) (the benefit of settlement is that each plaintiff  "will

recover a monetary award immediately, without having to risk an [unfavorable] outcome … from

a trial").  In weighing the risks of establishing liability and damages, the court "must only weigh

the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re

Austrian*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y.

1999) (internal quotation marks omitted)).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

A trial on the merits would involve significant risks for Plaintiffs as to both liability and

damages.  Plaintiffs would have to overcome Merrill's defense that Plaintiffs and Class Members

were subject to the white-collar exemptions to the FLSA, and the corresponding exemptions

under applicable state laws.  While Plaintiffs believe that they could ultimately establish

Merrill's liability, this would require significant factual development.  For example, after seven

years of litigation and a five-week trial, a jury in a similar misclassification case involving

financial services employees classified as exempt administrative employees reached a defense

verdict, which was upheld by both the district court and the Sixth Circuit Court of Appeals.  *See*

*Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012).  Plaintiffs also would have had to

prove willfulness in order to obtain a third year of liability and damages.  *See* 29 U.S.C. § 255.

In addition, Plaintiffs likely would have had to confront a fluctuating workweek argument, which

would have posed further risk as to damages.  Plaintiffs' Counsel are experienced and realistic,

and understand that the resolution of liability issues, the outcome of the trial, and the inevitable

appeals process are inherently uncertain in terms of outcome and duration.  The proposed

settlement alleviates these uncertainties.  This factor therefore weighs in favor of final approval.

> **5.**     **Maintaining the Class Through Trial Would Not Be Simple**
> **(*Grinnell* Factor 6).**

The risk of obtaining collective and class certification and maintaining both through trial

is also present.  The Court has not yet granted permission for Plaintiffs to proceed on their FLSA

claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice

to the FLSA collective, Merrill would likely challenge that determination at a later date, after the

close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y.

2011) (granting defendant's motion to decertify collective action).

In addition, the Court has not certified the Rule 23 Classes yet, and the parties anticipate

that such a determination would be reached only after further discovery and intense, exhaustive

briefing.  In opposing class certification, Merrill would likely argue that the differences among

various job positions and branches and other individualized questions preclude class

certification.  Although Plaintiffs disagree with these arguments, defendants have prevailed on

arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir.

2011) (affirming decertification, citing "variations in job duties that appear to be a product of

employees working at different facilities, under different managers, and with different customer

bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class

certification in misclassification case based on evidence that class members' duties varied by

location).  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk,

expense, and delay.  This factor favors final approval.

### 6.  Merrill's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is no evidence here that Merrill could not withstand a greater judgment.

However, even if Merrill could withstand a greater judgment, their ability to do so, "standing

alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re

Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court

from granting final approval.

### 7.  The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Merrill has agreed to settle this case for a substantial amount, up to $6.9 million.  This

amount represents substantial value given the attendant risks of litigation, even though recovery

could be greater if Plaintiffs attained both collective and class certification, overcame motions to

decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Id.* (quoting *In re Austrian*, 80

F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a

range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*

(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-

settled law that a cash settlement amounting to only a fraction of the potential recovery will not

*per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of*

*City and Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank*

*FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3

million class settlement over objections that the "best possible recovery would be approximately

$121 million").

Here, the settlement represents a substantial portion of the potential recovery. By Class

Counsel's estimation, the $6.9 million settlement represents approximately 74% of the class's

lost wages over the liability period (six years in New York, four years in California, and three

years in all other states) ($9,302,225), assuming that Class Members worked an average of 40

overtime weeks per year and 5 overtime hours per week,[4] if Merrill were to prevail on a

fluctuating workweek argument. If Plaintiffs defeated Merrill's fluctuating workweek argument,

despite the holdings of several Circuit Courts of Appeal that have considered the issue,[5] the

---

[4]        Class Counsel's estimate of 40 overtime weeks per year takes into account the
number of weeks in which there fell a bank holiday or in which Class Members likely took paid
days off, thus making it unlikely that they would have worked overtime in that week. Swartz
Decl. ¶ 42. Merrill estimated even fewer overtime weeks. *Id.* Class Counsel's investigation
indicated that Field FSAs typically worked an average of 7.5 overtime hours per week. *Id.* ¶ 43.

[5]        Although there is authority among district courts in this Circuit for applying time and
a half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 07
Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that

settlement would still represent approximately 30% of the class's lost wages ($22,905,891). The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Merrill prevailing on a fluctuating workweek argument. Swartz Decl. ¶ 44.

Here, each Class Member will receive a payment based upon the number of weeks for which they were employed during the relevant limitations periods. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $3,000. *Id.* ¶ 45. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

### III.      Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165

---

has considered the issue has endorsed the fluctuating workweek method of calculating damages, *see Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-84 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

(1989); *Reyes*, 2011 WL 4599822, at *6.  Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Reyes*, 2011 WL 4599822, at *6.  In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth.  Swartz Decl. ¶ 21.  During the entire process, Plaintiffs and Merrill were represented by counsel experienced in wage and hour law.  Because the Settlement Agreement resolves a clear and actual dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement classes; (2) grant final approval of the class settlement; and (3) approve the FLSA settlement.

Dated:      September 8, 2014
            New York, New York

                              Respectfully submitted,
                              **OUTTEN & GOLDEN LLP**

                              */s/ Justin M. Swartz*
                              Justin M. Swartz

                              Justin M. Swartz
                              Ossai Miazad
                              Jennifer L. Liu
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone:  (212) 245-1000

Facsimile:  (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**THE YOUNG LAW FIRM, P.C.**
Jeremi K. Young (admitted *pro hac vice*)
1001 S. Harrison Ave., Ste. 200
Amarillo, Texas 79101
Telephone: (806) 331-1800

**Attorneys for Plaintiffs and the Class and
Putative  Collective**