**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**THE YOUNG LAW FIRM, P.C.**
Jeremi K. Young (admitted *pro hac vice*)
1001 S. Harrison, Suite 200
Amarillo, Texas  79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROMAN ZELTSER, ANNA TYUTYUNIK, and JARED BROCK, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>     Defendants. | No. 13 Civ. 1531 (FM) |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
### APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF
        THE SETTLEMENT FUND .............................................................................. 2

III.    THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING
        ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT ....... 2

        A.      The *Goldberger* Factors Support an Award of One-Third of the Fund. ................. 6

        B.      Class Counsel's Time and Labor ........................................................... 6

        C.      Magnitude and Complexity of the Litigation......................................... 8

        D.      Risk of Litigation ................................................................................. 9

        E.      Quality of Representation ................................................................... 11

        F.      Fee in Relation to the Settlement. ..................................................... 12

        G.      Public Policy Considerations. ........................................................... 14

IV.     THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
        COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.................................... 15

V.      CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES
        UNDER THE SETTLEMENT AGREEMENT............................................... 19

VI.     CONCLUSION.................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945).................................................................................................14

*In re Am. Bank Note Holographics*, *Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................4

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ...............................................................................9

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981)...................................................................................................8

*In re Boesky Sec. Litig.*,
   888 F. Supp. 551 (S.D.N.Y. 1995)..........................................................................15

*Buccellato v. AT&T Operations, Inc.*,
   No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. Jun. 30, 2011) ............................16

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................................16

*Castagna v. Madison Square Garden, L.P.*,
   No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)............................18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................................9

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
   May 11, 2010)..........................................................................................................13

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. Jun. 24, 2010) ...........................13

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y.1991)...........................................................................16

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011)........................................................2, 12, 16

*deMunecas v. Bold Food, LLC*,
   No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .........................4, 15

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)................................................................................................14

*Diaz v. E. Locating Serv. Inc.*,
   No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ...........................18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................................16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................5

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..............................................................9, 12, 15

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)...........................12

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) ............................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................5

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................ *passim*

*Henry v. Quicken Loans, Inc.*,
   698 F.3d 897 (6th Cir. 2012) ..................................................................................10

*Hernandez v. Merrill Lynch & Co., Inc.*,
   No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ...........................18

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................13, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003).....................................................................19

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .......................5, 18

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964).................................................................................................14

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2012 WL 6584019 (S.D.N.Y. Dec. 12, 2012)...........................17

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)......................................13, 14

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................16

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. Jan. 29, 2002) ........................................................................16

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ...................................................................................................10

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010).......................................................................................................3

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).....................................................................................................11

*Nash v. CVS Caremark Corp.*,
   No. 09 Civ. 79, 2013 WL 684836 (D.R.I. Feb. 25, 2013) .......................................................17

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
   No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)............................................16

*Parker v. Jekyll & Hyde Entm't Holdings*,
   LLC, No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)..................................8, 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..................................................................................................................14

*In re Polaroid ERISA Litig.*,
   No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .........................................4, 5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996)...............................................................................................8

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ................................................16

*In re Ramp Corp. Sec. Litig.*,
   No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)................................................3, 5

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................3, 8, 14

*In re Rite Aid Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) .......................................................................................16

*In re RJR Nabisco, Inc. Sec. Litig.*,
  No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...........................................16

*Sand v. Greenberg*,
  No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)........................................3, 14, 15

*Savoie v. Merchants Bank*,
  166 F.3d 456 (2d Cir. 1999).................................................................................5, 15, 17

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 1320124, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)............................ *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) .............................................17

*Steiner v. Am. Broad. Co.*,
  248 F. App'x. 780 (9th Cir. 2007) .......................................................................................16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................................4

*In re Sumitomo Copper Litig.*,
  74 F. .......................................................................................................................................14

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999).........................................................................................4

*Taft v. Ackermans*,
  No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................................11, 13

*Toure v. Amerigroup Corp.*,
  No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012).............................................12

*Varljen v. H.J. Meyers & Co.*,
  No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...............................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...........................................13

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..........................................4, 5, 12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .......................................................................................15, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).............................................................................................3, 5, 16

*Willix v. Healthfirst Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)......................................3, 4, 13

*Zivali v. AT&T Mobility, LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011).....................................................................................11

**STATUTES**

29 U.S.C. § 216(b) ............................................................................................................9, 10

## I.   <u>INTRODUCTION</u>

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Outten & Golden LLP ("O&G"), Shavitz Law Group, P.A. ("SLG"), and The Young Law Firm ("YLF") respectfully move this Court for an award of attorneys' fees in the amount of $2,300,000, or one-third of the Settlement Fund (the "Fund"), and reimbursement of $29,149.19 in out-of-pocket expenses that Class Counsel incurred in prosecuting this action.

Over the past two years, Class Counsel has spent approximately 1,138 attorney, paralegal, and support staff hours prosecuting this case.  Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶ 23; Decl. of Gregg I. Shavitz in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Shavitz Decl.") ¶ 13; Decl. of Jeremi Young in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Young Decl.") ¶ 7.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $453,204.50.  Swartz Decl. ¶ 26.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  *Id.* ¶ 33.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should

---

[1]      For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval, and the Swartz Decl.

be awarded in light of the contingency risk undertaken and the result achieved in this case.

**II.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND.**

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their

work in recovering unpaid overtime wages on behalf of the class.  The Settlement Agreement,

which has been preliminarily approved by the Court, provides that "Class Counsel will petition

the Court for an award of attorneys' fees of no more than one third of the Gross Settlement

Amount, and, in addition, for reimbursement of their actual litigation costs and expenses . . . ."

Ex. A (Settlement Agreement) ¶ 3.2(A).[2]  In addition, the Court-approved Notice that was sent to

all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to one-third of the
> settlement fund for attorneys' fees.  These fees would compensate Class Counsel
> for investigating the facts, litigating the case, and negotiating the settlement.
> Class Counsel will also ask the Court to approve payment of up to $40,000 for
> their out-of-pocket costs, excluding the cost of the settlement administrator.

Ex. F (Rule 23 Notice) ¶ 16; Ex. G (FLSA Notice) ¶ 13.  No Class Member has objected to the

requested attorneys' fees or expense reimbursement.  Ex. B (Decl. of Mark Patton ("Patton

Decl.)) ¶ 8.  The lack of objections is some indication of the reasonableness of the requested

award and weighs in favor approving it.  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 1320124,

2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F.

Supp. 2d 172, 183 (W.D.N.Y. 2011).  The request for one-third of the Fund plus expenses is

reasonable and well within the range approved by courts in similar cases.

**III.    THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT.**

"In wage and hour class action lawsuits, public policy favors a common-fund attorneys' fee

---

[2]        Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

award." *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *Sewell*, 2012 WL 1320124, at *12-13; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011).  "Where relatively small claims can only be prosecuted through aggregate litigation," *Willix*, 2011 WL 754862, at *6, and the law relies on prosecution by "private attorneys general," "[a]ttorneys who fill [that] role must be adequately compensated for their efforts."  *Id.; Reyes*, 2011 WL 4599822, at *7; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Willix*, 2011 WL 754862, at *6; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks and citation omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2

3

(S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (internal quotation marks and citation omitted).  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *Willix*, 2011 WL 754862, at *7; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Second, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable

4

hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of

litigation."  *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re

Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL

2116398, at *5; *Velez*, 2007 WL 7232783, at *7.  The percentage method discourages plaintiffs'

lawyers from running up their billable hours, one of the most significant downsides of the

lodestar method.  *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been

noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive

to run up the number of billable hours for which they would be compensated under the lodestar

method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194,

2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

  Third, the percentage method preserves judicial resources because it "relieves the court of

the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Karpus,*

1194, 2004 WL 2397190, at *11(quoting *Savoie*, 166 F.3d at 461 n. 4).  The "primary source of

dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge,

compelling district courts to engage in a gimlet-eyed review of line-item fee audits."

*Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp.

Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No.

05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007).  While courts still use the

lodestar method as a "cross check" when applying the percentage of the fund method, they are

not required to scrutinize the fee records as rigorously.  *Goldberger,* 209 F.3d at 50; *see In re

Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied

lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000

WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the

lodestar cross check).

### A.    The *Goldberger* Factors Support an Award of One-Third of the Fund.

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the

Second Circuit articulated six factors for courts to consider in determining the reasonableness of

fee applications:

(1)    the time and labor expended by counsel;
(2)    the magnitude and complexities of the litigation;
(3)    the risk of litigation;
(4)    the quality of representation;
(5)    the requested fee in relation to the settlement; and
(6)    public policy considerations.

209 F.3d at 50 (internal quotation marks omitted).  All of the *Goldberger* factors weigh in favor

of granting approval of Class Counsel's fee application.

### B.    Class Counsel's Time and Labor.

Class Counsel spent significant effort to achieve the $6.9 million settlement.  Before the

initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the

potential claims and defenses.  Swartz Decl. ¶¶ 4-7.  Plaintiffs focused their investigation and

legal research on the underlying merits of Class Members' claims, the damages to which they

were entitled, and the propriety of class certification.  *Id.* ¶ 5.  Class Counsel conducted in-depth

interviews with Plaintiffs and several other workers to determine the hours that they worked, the

wages they were paid, the nature of their duties and responsibilities, and other information

relevant to their claims.  *Id.* ¶ 6.  Plaintiffs conducted in-depth background research on Merrill,

including reviewing SEC filings and other public documents, to obtain information on Merrill's

corporate structure and facilities.  *Id.* ¶ 7.  Plaintiffs also obtained numerous job postings for the

Field FSA position from across the country to determine the nature of the duties and

responsibilities of the position.  *Id.*

6

After filing, Plaintiffs engaged in litigation, including documentary discovery produced by both sides. *Id.* ¶¶ 8-12. After the parties agreed to attend mediation, Merrill produced data showing the number of Class Members in relevant job titles, salaries and other non-discretionary compensation, weeks worked, and location of employment. *Id.* ¶ 14. Plaintiffs used this data to perform detailed damages calculations. *Id.*

On January 21, 2014, the parties attended a full day mediation session in San Francisco, California, with David Rotman, Esq., a well-known and experienced mediator in wage and hour law. *Id.* ¶ 15. The parties did not reach agreement during the mediation, but instead continued to coordinate further discovery following the mediation. *Id.* ¶ 17. Additionally, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA. *Id.* ¶ 18. On February 19, 2014, the parties accepted the mediator's settlement proposal and began negotiating the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement"). *Id.* ¶¶ 19-20.

In performing these tasks, Class Counsel expended approximately 1,138 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $453,204.50. *Id.* ¶¶ 23, 26; Shavitz Decl. ¶ 13-14; Young Decl. ¶ 7. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Swartz Decl. ¶ 24; Shavitz Decl. ¶ 17; Young Decl. ¶ 7. Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it. Swartz Decl. ¶ 23; Shavitz Decl. ¶ 16.

Moreover, the requested fee is not based solely on time and effort already expended,

rather, it is also meant to compensate Class Counsel for time that will be spent administering the

settlement in the future.  Swartz Decl. ¶ 29.  *See Reyes*, 2011 WL 4599822, at *8 ("The fact that

Class Counsel's fee award will not only compensate them for time and effort already expended,

but for time that they will be required to spend administering the settlement going forward also

supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings*, LLC,

No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely

to expend significant effort in the future implementing the complex procedure agreed upon for

collecting and distributing the settlement funds, the multiplier will diminish over time.").  In

Class Counsel's experience, administering class settlements of this nature and size requires a

substantial and ongoing commitment.  Swartz Decl. ¶ 29.  For example, since the Notice was

sent out, Class Counsel and staff have responded to numerous Class Members' questions about

the terms of the settlement and the amount of their settlement award.  Swartz Decl. ¶ 29.  As is

common in wage and hour class actions, Class Counsel expects to respond to more Class

Member inquiries after final approval, especially after checks are issued.  *Id.*

### C.  Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in

making a fee award.  *Goldberger*, 209 F.3d at 50; *see also In re Prudential Sec. Inc. Ltd. P'ship

Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  Courts have recognized that wage and hour cases

involve complex legal issues.  "FLSA claims typically involve complex mixed questions of fact

and law[.]  These statutory questions must be resolved in light of volumes of legislative history

and over four decades of legal interpretation and administrative rulings."  *Barrentine v.

Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where

8

state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

This case hinged on several mixed questions of fact and law.  In particular, the parties disputed the facts surrounding the job duties of Field FSAs whom Plaintiffs alleged were misclassified under the FLSA and state law.  These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request.  *See Sewell*, 2012 WL 1320124, at *12; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing 40% of the common fund).

### D.      Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger*, 209 F.3d 43 (2d Cir. 2000).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Swartz Decl. ¶ 30; Shavitz Decl. ¶ 22; Young Decl. ¶ 9.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Swartz Decl. ¶ 30; Shavitz Decl. ¶ 17; Young Decl. ¶ 9.  Any lawyer undertaking representation of large numbers of

affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Swartz Decl. ¶ 30; Shavitz Decl. ¶ 22; Young Decl. ¶ 9.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Swartz Decl. ¶ 30; Shavitz Decl. ¶ 22; Young Decl. ¶ 9.  Class Counsel stood to gain nothing in the event the case was unsuccessful.  Swartz Decl. ¶ 30; Shavitz Decl. ¶ 22; Young Decl. ¶ 9.

Moreover, the circumstances of this case presented hurdles to a successful recovery.  Plaintiffs' misclassification claim hinged on their ability to prove that Field FSAs performed duties that made them eligible for overtime and therefore not exempt under the FLSA and relevant state laws.  For example, after seven years of litigation and a five-week trial, a jury in a similar misclassification case involving financial services employees classified as exempt administrative employees reached a defense verdict, which was upheld by both the district court and the Sixth Circuit Court of Appeals.  *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012).

Furthermore, when taking on this case, Plaintiffs' counsel faced the risk that the Court would not grant conditional certification under Section 216(b) of the FLSA or class certification under Rule 23, and such a determination would likely be reached only after extensive briefing.  Defendants would likely have argued, both in their opposition to conditional and class certification and on a decertification motion, that individual questions preclude certification, including whether Field FSAs had uniform job duties across Defendants' branches and throughout the class period.  Although Plaintiffs disagree with these agreements, defendants have prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942,

949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).

> ### E. <u>Quality of Representation.</u>

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

The recovery obtained was substantial. Defendant agreed to pay up to $6.9 million to settle this litigation. By Class Counsel's estimation, the settlement amount represents approximately 74% of the class's lost wages over the liability period, calculated on a half-time basis, and 30% of the class's lost wages calculated on a time-and-a-half basis.[3] Rule 23 Class Members who have not opted out and FLSA Class Members who have submitted claim forms will receive a proportional share of the Fund based on the number of weeks they worked and the state in which they worked. Ex. A (Settlement Agreement) § 3.4(B). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. The settlement amounts will be available to Class Members without the uncertainty and delay of trial.

---

[3]     For further details on the assumptions Class Counsel made to perform these calculations, Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval, and the Swartz Declaration.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions.  Swartz Decl. ¶ 22 (listing cases); Shavitz Decl. ¶ 6 (listing cases); Young Decl. ¶ 4 (listing cases).  Class Counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.  Swartz Decl. ¶ 22; *Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### F.   Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $6.9 million settlement weighs in favor of granting the requested fee award of one-third of the common fund.  *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one-third of a $42 million settlement in a FLSA and NYLL misclassification case).  Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to or substantially larger than this one.  *See, e.g., Toure v. Amerigroup Corp.*, No.

10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of $4.45 million fund in misclassification case); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund in FLSA and multi-state wage and hour case); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); ; *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases, in order to prevent a windfall to plaintiffs' attorneys, the $6.9 million settlement in this case does not trigger such an issue. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *3-4 (E.D.N.Y. Jun. 24, 2010) (noting that some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case involving $225 million settlement); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in similar class action settlements of comparable value . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *10 ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [$15.175 million] does not create such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall."). A fee of one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (citation omitted).

G.     **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Reyes*, 2011 WL 4599822, at *7; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims

14

[will] likely . . . be heard." *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

**IV.     THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.**

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2 (citation omitted).  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks*, 2005 WL 2757792, at *8.  In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two to

15

six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); s*ee, e.g., Steiner v. Am. Broad. Co.*, 248 F. App'x. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of six); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of six); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Class Counsel's request for one-third of the Fund – $2,300,000 – is approximately 5.1 times "lodestar." While this multiplier is near the higher end of the range of multipliers that courts have approved, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial. *See Wal-Mart*

*Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early

settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a

gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n.5 (noting that "the

lodestar method does not reward early settlement" and that "class counsel should [not]

necessarily receive a lesser fee for settling a case quickly"); *Savoie*, 166 F.3d at 461 ("[T]he

percentage-of-the-fund method also removes disincentives to prompt settlement, because

plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

Moreover, "where 'class counsel will be required to spend significant additional time on

this litigation in connection with implementing and monitoring the settlement, the multiplier will

actually be significantly lower' because the award includes not only time spent prior to the

award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y.

Aug. 6, 2010)).  The multiplier that Class Counsel seeks will diminish over time as Class

Counsel spends additional time working on this case, including preparing for and attending the

final fairness hearing, answering Class Member questions, answering questions from the claims

administrator, and negotiating and possibly litigating disagreements with Defendants about

administering the settlement and distributing the fund.  Swartz Decl. ¶ 29; *see, e.g.*, *Nash v. CVS

Caremark Corp.*, No. 09 Civ. 79, 2013 WL 684836, at *1 (D.R.I. Feb. 25, 2013) (granting in part

plaintiffs' motion to order defendants to comply with class settlement agreement); *Johnson v.

Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving

dispute over whether *cy pres* designee was appropriate); *Sewell v. Bovis Lend Lease, Inc.*, No. 09

Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) (allowing late opt-in to participate in class

settlement) (attached as Exhibit D to the Swartz Decl.); *Gilliam v. Addicts Rehab. Ctr. Fund*, No.

17

05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

Moreover, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

Class Counsel spent approximately 1,138 hours litigating and settling this matter. Swartz Decl. ¶ 23; Shavitz Decl. ¶ 13; Young Decl. ¶ 7. The time spent by Class Counsel is described in Class Counsel's Declarations and Class Counsel's contemporaneous time records attached thereto. *See* Ex. E (O&G Time Summary); Ex. F (O&G Time Records); Shavitz Decl., Ex. A (SLG Time and Costs Summary); Shavitz Decl., Ex. B (SLG Time Records); Young Decl., Ex. A (YLF Time Summary); Young Decl., Ex. B (YLF Time Records); Young Decl., Ex. C (YLF Expense Summary). The hours worked by Class Counsel result in a lodestar of approximately $453,204.50. Swartz Decl. ¶ 26; Shavitz Decl. ¶ 14; Young Decl. ¶ 7. Class Counsel's request

18

for approximately 5.1 times their lodestar is within the range of multipliers regularly awarded by courts.

**V.      CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT.**

Class Counsel request reimbursement of $29,149.19 in out-of-pocket expenses to be paid from the Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).  Here, Class Counsel's actual expenses of $29,149.19 were incidental and necessary to the representation of the Class.  Swartz Decl. ¶ 27; Shavitz Decl. ¶ 14; Young Decl. ¶ 7.  These expenses include court and process server fees, conference calls, document processing, postage and courier fees, transportation, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees.  *Id.*, Ex. G (O&G Costs); Shavitz Decl., Ex. A (SLG Time and Costs Summary); Young Decl., Ex. C (YLF Expense Summary).

**VI.      CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $2,300,000, which represents one-third of the Fund; and (ii) reimbursing $29,149.19 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated:  September 8, 2014
        New York, New York

                                    Respectfully submitted,
                                    **OUTTEN & GOLDEN LLP**

                                    */s/ Justin M. Swartz*

Justin M. Swartz

Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**THE YOUNG LAW FIRM, P.C.**
Jeremi K. Young (admitted *pro hac vice*)
1001 S. Harrison Ave., Ste. 200
Amarillo, Texas 79101
Telephone: (806) 331-1800

**Attorneys for Plaintiffs and the Class and
Putative Collective**