**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

**THE YOUNG LAW FIRM, P.C.**
Jeremi K. Young (admitted *pro hac vice*)
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROMAN ZELTSER, ANNA TYUTYUNIK, and JARED BROCK, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>      Defendants. | No. 13 Civ. 1531 (FM) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT,
<u>AND APPROVAL OF THE FLSA SETTLEMENT</u>**

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group. O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with Shavitz Law Group, P.A. ("Shavitz Law Group") and The Young Law Firm, P.C. (together with O&G, "Class Counsel"), I have been one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Thorough Investigation of the Class Claims**

4. This proposed settlement would resolve claims brought by Plaintiffs Roman Zeltser, Anna Tyutyunik, and Jared Brock ("Plaintiffs") on behalf of themselves and other similarly situated Field Financial Solutions Advisors ("Field FSAs") and those in comparable positions employed by Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation (collectively "Merrill" or "Defendant"), alleging that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them and other Field FSAs overtime wages.

5. Before initiating this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group and The Young Law Firm, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on the underlying merits of Class Members' claims, the damages

to which they were entitled, and the propriety of class certification.

6. We interviewed Plaintiffs and several other workers to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.

7. We conducted in-depth background research on Merrill, including reviewing SEC filings and other public documents, to obtain information on Merrill's corporate structure and facilities. We also obtained numerous job postings for the Field FSA position from across the country to determine the nature of the duties and responsibilities of the position.

**Litigation**

8. On March 7, 2013, Plaintiffs Roman Zeltser and Anna Tyutyunik filed a Class Action Complaint against Defendants, pursuant to 29 U.S.C. § 216(b), in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated. Plaintiffs alleged that Defendants violated the FLSA and the New York Labor Law and supporting New York State Department of Labor Regulations ("NYLL") by misclassifying Field FSAs as exempt employees and failing to pay them overtime wages in violation of state wage and hour laws. Plaintiffs sought recovery of overtime wages, attorneys' fees, costs, interest, and liquidated damages.

9. On September 3, 2013, Plaintiffs filed an Amended Complaint adding an additional Named Plaintiff, Jared Brock, and claims under the California Wage Laws. Defendants filed their answer to the Amended Complaint on September 17, 2013.

10. During the pendency of the case, six current and former Field FSAs also joined the case as opt-in Plaintiffs.

11. In discovery, Merrill produced over 1,700 pages of documents regarding Plaintiffs and opt-in Plaintiffs, as well as Merrill's company-wide policies and practices, which Plaintiffs reviewed.

12. Plaintiffs also produced documents in response to Merrill's discovery requests, and responded to Defendants' interrogatories.

**Settlement Negotiations**

13. On or about November 12, 2013, the parties agreed to attend mediation in an attempt to resolve the litigation.

14. To enable Plaintiffs to perform damages calculations, Merrill produced data showing the number of class members, salaries and other non-discretionary compensation, weeks worked, and location of employment. Plaintiffs performed damages calculations based on the data Defendants provided.

15. On January 21, 2014, the parties attended a full-day mediation session in San Francisco, California, with David Rotman, Esq., a well-known and experienced mediator in wage and hour law. During the mediation, the parties engaged in a vigorous exchange regarding their respective claims and defenses.

16. After a full day of mediation, Mr. Rotman made a mediator's proposal to resolve the matter.

17. While the parties considered the mediator's proposal, they continued to coordinate expedited discovery.

18. On January 30, 2014, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.

19. On February 19, 2014, Mr. Rotman informed the parties that both sides had

accepted the terms of the mediator's proposal.

20. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

21. At all times during the settlement negotiation process, negotiations were vigorous and conducted on an arm's-length basis.

**Time Spent on the Litigation**

22. O&G has significant experience prosecuting wage and hour class and collective actions such as this one. O&G is or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *9 (S.D.N.Y. Apr. 16, 2012) (approving settlement of wage and hour class action brought under New York and federal law; *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (same); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 WL 5509089, at *1 (E.D.N.Y. Nov. 29, 2010) (approving settlement of wage and hour class action brought under New York and federal law); *Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Clark v. Ecolab Inc.*, Nos. 07 Civ.

8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *1-3 (E.D.N.Y. June 26, 2009) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action). Class Counsel's experience was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

23. As of September 8, 2014, O&G has spent more than 631.5 hours litigating and settling this litigation, including time spent by attorneys, paralegals, law clerks, and administrative assistants. Although O&G is relatively large for a plaintiffs' side employment law firm, a small team of attorneys were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. O&G also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively. Attached as **Exhibit E** are summaries of the time spent by each attorney, paralegal, and support staff member as of September 8, 2014, and the costs incurred.

24. The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

25. Attached as **Exhibit F** are O&G's contemporaneous time records.

26. As of September 8, 2014, O&G's total lodestar on the case was $240,393. As of September 8, 2014, Class Counsel's total lodestar on the case was $453,204.50. Class Counsel's request for one-third of the fund, or $2,300,000, is approximately 5.1 times their lodestar.

27.     As of September 8, 2014, O&G has incurred approximately $21,662.03 in out-of-pocket costs prosecuting this litigation.  As of September 8, 2014, Class Counsel has incurred approximately $29,149.19 in out-of-pocket costs prosecuting this litigation.  These costs were incidental and necessary to the prosecution of this lawsuit and court and process server fees, conference calls, document processing, postage and courier fees, transportation, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees.  A summary of O&G's itemized costs is attached as **Exhibit G**.

28.     In our experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.  In Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for one-third of a class-wide recovery and that they would pay Class Counsel one-third of any individual recovery.

29.     The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future.  In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  For example, since the Notices were mailed, Class Counsel and staff have responded to numerous inquiries from Class Members.  Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued.  Class Counsel also expects to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund.  *See, e.g.*, *Nash v. CVS Caremark Corp.*, No. 09 Civ. 79,

2013 WL 684836, at *1 (D.R.I. Feb. 25, 2013) (granting in part plaintiffs' motion to order defendants to comply with class settlement agreement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving dispute over whether *cy pres* designee was appropriate); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

30. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

31. O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, O&G's rates range from $550 to $1,025 per partner's hour, $490 to $790 per counsel's hour, $250 to $475 per associate's hour, $235 per law clerk's hour, and $220 to $250 per paralegal's hour. The firm's clients regularly accept and pay O&G's hourly rates.

32. Based upon O&G's records, in 2013, approximately 28.2% of the hours lawyers spent on client matters were billed to paying clients. There is no shortage of hourly work at O&G. Thus, when O&G lawyers spend time on contingency matters, they do so at significant

opportunity cost for the firm.  Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

33. To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

**Efforts of the Named Plaintiffs and Litigation Opt-In Plaintiffs**

34. Named Plaintiffs Roman Zeltser, Anna Tyutyunnik, and Jared Brock ("Named Plaintiffs") have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

35. Named Plaintiffs assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims, and by assisting with the preparation and review of the complaint.

36. Throughout the litigation, Named Plaintiffs regularly made themselves available to communicate with Class Counsel when necessary.  The Named Plaintiffs and Litigation Opt-In Plaintiffs provided declarations in support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.  ECF No. 59.

37. In addition, the Named Plaintiffs responded to Defendants' requests for documents and provided interrogatory responses.[1]  They also submitted declarations in support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.  The Named Plaintiffs and Litigation Opt-In Plaintiffs were all also noticed for depositions, and several had their depositions scheduled and worked with Class

---

[1] Because the parties agreed to attend mediation, Plaintiffs never served Defendants with their responses to the interrogatories or request for documents.

Counsel to prepare for their depositions before the parties reached an agreement to resolve the case.

38. Opt-in Plaintiffs Marc Steinberg, Teesta Kaur, Peter Cole, William Wesley, and John Jacobson also made important contributions to the prosecution and resolution of this action on behalf of Class Members. They made themselves available to Class Counsel throughout the litigation and negotiation, provided factual information about their employment, and provided detailed factual declarations regarding their hours worked, their wages paid, and the nature of their duties and responsibilities in support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.

**Plaintiffs' Motion for Preliminary Approval**

39. On May 7, 2014, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notices of Settlement ("Motion for Preliminary Approval"), in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class. ECF No. 72.

40. On May 12, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.

**CAFA Notice**

41. Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on May 16, 2014. The 90-day CAFA notice period concluded on August 14, 2014.

**The Settlement Fund**

42. The Settlement Agreement establishes a gross settlement amount of up to $6,900,000, which covers class members' awards, service awards, attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with setting up, administering, maintaining or liquidating the Settlement Fund.

43. By Class Counsel's estimation, the $6.9 million settlement represents approximately 74% of the class's lost wages over the liability period (six years in New York, four years in California, and three years in all other states) ($9,302,225), assuming that Class Members worked an average of 40 overtime weeks per year and 5 overtime hours per week,[2] if Merrill were to prevail on a fluctuating workweek argument. If Plaintiffs defeated Merrill's fluctuating workweek argument, despite the holdings of several Circuit Courts of Appeal that have considered the issue,[3] the settlement would still represent approximately 30% of the class's lost wages ($22,905,891).

44. Plaintiffs faced significant litigation risks in this case, including the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Merrill prevailing on a fluctuating workweek

---

[2] Class Counsel's estimate of 40 overtime weeks per year takes into account the number of weeks in which there fell a bank holiday or in which Class Members likely took paid days off, thus making it unlikely that they would have worked overtime in that week. Merrill estimated even fewer overtime weeks. Class Counsel's investigation indicated that Field FSAs typically worked an average of 7.5 overtime hours per week.

[3] Although there is authority among district courts in this Circuit for applying time and a half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that has considered the issue has endorsed the fluctuating workweek method of calculating damages, *see Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-84 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

argument.

45. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $3,000.

**Claims Administration**

46. The parties jointly selected Settlement Services, Inc. ("Claims Administrator"), an experienced wage and hour Claims Administrator, to administer the settlement.

47. There are approximately 599 members of the New York Rule 23 Class and the California Rule 23 Class. There are approximately 893 FLSA Class Members.

48. After the Claims Administrator issued the Notices, Class Counsel received numerous phone calls and emails from Class Members who reacted very positively to the settlement.

49. Attached as **Exhibit B** is the Declaration of Mark Patton, dated September 3, 2014, who supervised the administration of the settlement notices in this case ("Patton Declaration").

50. Attached as **Exhibit C** is a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Rule 23 Notice").

51. Attached as **Exhibit D** is a Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 8th day of September, 2014
New York, New York.

                                           /s/ Justin M. Swartz
                                        Justin M. Swartz
                                        **Outten & Golden LLP**
                                        3 Park Avenue, 29th Floor
                                        New York, NY 10016
                                        (212) 245-1000